**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

IRON MAIDEN HOLDINGS LTD.,

     Plaintiff,

v.

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

     Defendants.

Case No.: 1:18-cv-522

**COMPLAINT**

Plaintiff Iron Maiden Holdings Ltd. ("IMHL" or "Plaintiff"), by its undersigned counsel, hereby complains of the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants"), and for its Complaint hereby alleges as follows:

**JURISDICTION AND VENUE**

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq. 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets consumers in the United States, including Illinois, through at least the fully interactive commercial Internet stores operating under the Defendant Domain Names and/or the Online

Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of Plaintiff's trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products bearing counterfeit versions of Plaintiff's federally registered trademark to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## INTRODUCTION

3.   This action has been filed by Plaintiff to combat online counterfeiters who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's IRON MAIDEN trademarks, which are covered by U.S. Trademark Registration Nos. 4,848,431; 3,840,031; 1,307,146; 1,306,972 and 1,308,370. The Registrations are valid, subsisting, and in full force and effect. A true and correct copy of the federal trademark registration certificates for the marks are attached hereto as Exhibit 1.

4.   The Defendants create numerous Defendant Internet Stores and design them to appear to be selling genuine Plaintiff products, while selling inferior imitations of Plaintiff's products. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going

2

to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of Plaintiff's registered trademarks, as well as to protect unknowing consumers from purchasing unauthorized IRON MAIDEN products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

5.      This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and in this Judicial District. In addition, each defendant has offered to sell and ship infringing products into this Judicial District.

**THE PLAINTIFF**

6.      Plaintiff, Iron Maiden Holdings Ltd., is a Limited company having its principal place of business in the United Kingdom. It is associated with IRON MAIDEN, an English metal band formed in Leyton, East London, in 1975 by bassist and primary songwriter Steve Harris. Plaintiff is the official source of IRON MAIDEN products:



https://ironmaiden.com/online-shop

7.      Since the initial launch of its original IRON MAIDEN brand products, Plaintiff's IRON MAIDEN marks are and have been the subject of continuous marketing and promotion by Plaintiff. Plaintiff has and continues to market and promote its IRON MAIDEN marks in the industry and to consumers.

8.      The IRON MAIDEN trademarks are distinctive and identify the merchandise as goods from Plaintiff. The registrations for the IRON MAIDEN trademarks constitute prima facie evidence of their validity and of Plaintiff's exclusive right to use the IRON MAIDEN trademarks pursuant to 15 U.S.C. § 1057 (b).

9.      The IRON MAIDEN trademarks have been continuously used and never abandoned.

10.     Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the IRON MAIDEN trademarks. As a result, products

bearing the IRON MAIDEN trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff.

## THE DEFENDANTS

11.     Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within Illinois and in this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit IRON MAIDEN products to consumers within the United States, including Illinois and in this Judicial District.

## THE DEFENDANTS' UNLAWFUL CONDUCT

12.     The success of the IRON MAIDEN brand has resulted in its counterfeiting. Plaintiff has identified numerous domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer and Aliexpress, including the Defendant Internet Stores, which were offering for sale, selling, and importing counterfeit IRON MAIDEN products to consumers in this Judicial District and throughout the United States. Defendants have persisted in creating the Defendant Internet Stores. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2013 was over $1.74 billion, up from $1.26 billion in 2012. Internet websites like the Defendant Internet Stores are also estimated to contribute to

tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

13.     Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine IRON MAIDEN products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. Plaintiff has not licensed or authorized Defendants to use its IRON MAIDEN trademarks, and none of the Defendants are authorized retailers of genuine IRON MAIDEN products.

14.     Upon information and belief, Defendants also deceive unknowing consumers by using the IRON MAIDEN trademarks without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for IRON MAIDEN products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine IRON MAIDEN products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, Plaintiff also seeks to disable Defendant

Domain Names owned by Defendants that are the means by which the Defendants could continue to sell counterfeit IRON MAIDEN products.

15.     Defendants often go to great lengths to conceal their identities by often using multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Other Defendant Domain Names often use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

16.     There are similarities among the Defendant Internet Stores. For example, some of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, the counterfeit IRON MAIDEN products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the counterfeit IRON MAIDEN products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

17.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

18.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

19.     Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the IRON MAIDEN trademarks in connection with the advertisement, distribution, offering for sale, and sale of counterfeit IRON MAIDEN products into the United States and Illinois over the Internet. Each Defendant Internet Store offers

shipping to the United States, including Illinois, and, on information and belief, each Defendant has offered to sell counterfeit IRON MAIDEN products into the United States, including Illinois.

20.     Defendants' use of the IRON MAIDEN trademarks in connection with the advertising, distribution, offering for sale, and sale of counterfeit IRON MAIDEN products, including the sale of counterfeit IRON MAIDEN products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

21.     Plaintiff repeats and incorporates by reference herein its allegations contained in the above paragraphs of this Complaint.

22.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered IRON MAIDEN trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The IRON MAIDEN trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Plaintiff's products provided under the IRON MAIDEN trademarks.

23.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the IRON MAIDEN trademarks without Plaintiff's permission.

24.     Plaintiff is the exclusive owner of the IRON MAIDEN trademarks. Plaintiff's United States Registrations for the IRON MAIDEN trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the

IRON MAIDEN trademarks, and are willfully infringing and intentionally using counterfeits of the IRON MAIDEN trademarks. Defendants' willful, intentional and unauthorized use of the IRON MAIDEN trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

25.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

26.     Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known IRON MAIDEN trademarks.

27.     The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit IRON MAIDEN products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

28.     Plaintiff repeats and incorporates by reference herein its allegations contained in the above paragraphs of this Complaint.

29.     Defendants' promotion, marketing, offering for sale, and sale of counterfeit IRON MAIDEN products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' counterfeit IRON MAIDEN products by Plaintiff.

30.     By using the IRON MAIDEN trademarks in connection with the sale of counterfeit IRON MAIDEN products, Defendants create a false designation of origin and a

misleading representation of fact as to the origin and sponsorship of the counterfeit IRON MAIDEN products.

31.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit IRON MAIDEN products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

32.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, et seq.)

33.     Plaintiff repeats and incorporates by reference herein its allegations contained in the above paragraphs of this Complaint.

34.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their counterfeit IRON MAIDEN products as those of Plaintiff, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine IRON MAIDEN products, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

35.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

36.     Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily preliminarily, and permanently enjoined and restrained from:

a.  using the IRON MAIDEN trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine IRON MAIDEN product or is not authorized by Plaintiff to be sold in connection with the IRON MAIDEN trademarks;

b.  passing off, inducing, or enabling others to sell or pass off any product as a genuine IRON MAIDEN product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the IRON MAIDEN trademarks;

c.  committing any acts calculated to cause consumers to believe that Defendants' counterfeit IRON MAIDEN products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d.  further infringing the IRON MAIDEN trademarks and damaging Plaintiff's goodwill;

e.  otherwise competing unfairly with Plaintiff in any manner;

f.  shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any Plaintiff trademarks, including the IRON MAIDEN trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

g.  using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, the Defendant Domain Names, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell counterfeit IRON MAIDEN products; and

h.  operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the IRON MAIDEN trademarks or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine IRON MAIDEN product or not authorized by Plaintiff to be sold in connection with the IRON MAIDEN trademarks; and

2)  That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with paragraph 1, a through h, above;

3)  Entry of an Order that, at Plaintiff's choosing, the registrant of the Defendant Domain Names shall be changed from the current registrant to Plaintiff, and that the domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall

unlock and change the registrar of record for the Defendant Domain Names to a registrar of Plaintiff's selection, and that the domain name registrars take any steps necessary to transfer the Defendant Domain Names to a registrar of Plaintiff's selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and untransferable;

4) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as iOffer and Alibaba Group Holding Ltd., Alipay.com Co., Ltd. and any related Alibaba entities (collectively, "Alibaba"), social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, web hosts for the Defendant Domain Names, and domain name registrars, shall:

    a. disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit IRON MAIDEN products using the IRON MAIDEN trademarks, including any accounts associated with the Defendants listed on Schedule A;

    b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit IRON MAIDEN products using the IRON MAIDEN trademarks; and

    c. take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index; and

5) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for

infringement of the IRON MAIDEN trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

6)   In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the IRON MAIDEN trademarks;

7)   That Plaintiff be awarded its reasonable attorneys' fees and costs; and

8)   Award any and all other relief that this Court deems just and proper.


DATED: January 23, 2018                              Respectfully submitted,

                                                     */s/ Keith A. Vogt*
                                                     Keith A. Vogt, Esq. (Bar No. 6207971)
                                                     1033 South Blvd., Suite 200
                                                     Oak Park, Illinois 60302
                                                     Telephone: 708-203-4787
                                                     E-mail:  keith@vogtip.com

                                                     ***ATTORNEY FOR PLAINTIFF***