IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IRON MAIDEN HOLDINGS LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 1:18-cv-522 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| THE PARTNERSHIPS AND ) | |
| UNINCORPORATED ASSOCIATIONS ) | Magistrate Judge Maria Valdez |
| IDENTIFIED ON SCHEDULE "A", ) | |
| ) | |
| Defendants. ) | |

**FINAL JUDGMENT ORDER**

This action having been commenced by IRON MAIDEN HOLDINGS LTD. ("IMHL") against the defendants identified as No. 84 Hi Painting Store in Schedule A and using the Defendant Domain Names and Online Marketplace Accounts (collectively, the "Defendant Internet Stores"), and IMHL having moved for entry of Default and Default Judgment against A Certain Defendant identified in Schedule A attached hereto (collectively, the "Defaulting Defendant");

This Court having entered upon a showing by IMHL, a temporary restraining order and preliminary injunction against Defaulting Defendant which included a domain name transfer order and asset restraining order;

IMHL having properly completed service of process on Defaulting Defendant, the combination of providing notice via electronic publication or e-mail, along with any notice that Defaulting Defendant received from payment processors, being notice reasonably calculated under all circumstances to apprise Defaulting Defendant of the pendency of the action and affording them the opportunity to answer and present their objections; and

None of the Defaulting Defendant having answered the Complaint or appeared in any way, and the time for answering the Complaint having expired;

THIS COURT HEREBY FINDS that it has personal jurisdiction over the Defendants since the Defendants directly target their business activities toward consumers in the United States, including Illinois. "In the context of cases like this one, that means a plaintiff must show that each defendant is actually operating an interactive website that is accessible in Illinois and that each defendant has aimed such site at Illinois by standing ready, willing and able to ship its counterfeit goods to customers in Illinois in particular (or otherwise has some sufficient voluntary contacts with the state)." *Am. Bridal & Prom Indus. Ass'n v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 192 F.Supp.3d 924, 934 (N.D. Ill. 2016). In this case, Plaintiff has presented screenshot evidence that each Defendant Internet Store is reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can and do purchase products using counterfeit versions of Plaintiffs' Trademarks. See Docket No. 12 which include screenshot evidence confirming that each Defendant Internet Store does stand ready, willing and able to ship its counterfeit goods to customers in Illinois bearing infringing and/or counterfeit versions of the IRON MAIDEN Trademarks, U.S. Trademark Registration Nos. 4,848,431; 3,840,031; 1,307,146; 1,306,972 and 1,308,370.

THIS COURT FURTHER FINDS that Defaulting Defendant is liable for willful federal trademark infringement and counterfeiting (15 U.S.C. § 1114), false designation of origin (15 U.S.C. § 1125(a)), and violation of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS § 510, et seq.).

IT IS HEREBY ORDERED that IMHL's Motion for Entry of Default and Default Judgment is GRANTED in its entirety, that Defaulting Defendant is deemed in default and that this Final Judgment is entered against Defaulting Defendant.

IT IS FURTHER ORDERED that:

1. Defaulting Defendant, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be permanently enjoined and restrained from:

    a. using the IRON MAIDEN Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine IMHL Product or not authorized by IMHL to be sold in connection with the IRON MAIDEN Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine IMHL Product or any other product produced by IMHL, that is not IMHL' or not produced under the authorization, control or supervision of IMHL and approved by IMHL for sale under the IRON MAIDEN Trademarks;

    c. committing any acts calculated to cause consumers to believe that Defaulting Defendant's products are those sold under the authorization, control or supervision of IMHL, or are sponsored by, approved by, or otherwise connected with IMHL;

    d. further infringing the IRON MAIDEN Trademarks and damaging IMHL's goodwill;

    e. otherwise competing unfairly with IMHL in any manner;

    f. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for IMHL, nor authorized by IMHL to be sold or

offered for sale, and which bear any of the IRON MAIDEN Trademarks or any reproductions, counterfeit copies or colorable imitations thereof;

g. using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, the Defendant Domain Names, or any other domain name or online marketplace account that is being used to sell or is the means by which Defaulting Defendant could continue to sell Counterfeit/Infringing Products; and

h. operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defaulting Defendant that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the IRON MAIDEN Trademarks or any reproductions, counterfeit copies or colorable imitations thereof that is not a genuine IMHL Product or not authorized by IMHL to be sold in connection with the IRON MAIDEN Trademarks.

2. The domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, within three (3) business days of receipt of this Order, shall, at IMHL's choosing:

a. permanently transfer the Defendant Domain Names to IMHL's control, including unlocking and changing the registrar of record for the Defendant Domain Names to a registrar of IMHL's selection, and the domain name registrars shall take any steps necessary to transfer the Defendant Domain Names to a registrar of IMHL' selection; or

b. cancel the registrations for the Defendant Domain Names and make them inactive.

3. Those in privity with Defaulting Defendant and with actual notice of this Order, including any online marketplaces such as iOffer and Alibaba Group Holding Ltd., Alipay.com Co., Ltd. and any related Alibaba entities (collectively, "Alibaba"), social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, web hosts for the Defendant Domain Names, and domain name registrars, shall within three (3) business days of receipt of this Order:

   a. disable and cease providing services for any accounts through which Defaulting Defendant engages in the sale of counterfeit and infringing goods using the IRON MAIDEN Trademarks, including any accounts associated with the Defaulting Defendant listed on Schedule A as No. 84 Hi Painting Store;

   b. disable and cease displaying any advertisements used by or associated with Defaulting Defendant in connection with the sale of counterfeit and infringing goods using the IRON MAIDEN Trademarks; and

   c. take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index.

4. Pursuant to 15 U.S.C. § 1117(c)(2), IMHL is awarded statutory damages from each of the Defaulting Defendant in the amount of one million dollars ($1,000,000) for willful use of counterfeit IRON MAIDEN Trademarks on products sold through at least the Defendant Internet Stores.

5. Western Union shall, within two (2) business days of receipt of this Order, permanently block any Western Union money transfers and funds from being received by the Defaulting Defendant identified on Schedule A.

6. Amazon Payments, Inc. ("Amazon"), ContextLogic, Inc. ("WISH), PayPal, Inc. ("PayPal") and/or Alipay US, Inc. ("Alipay") shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendant, Defaulting Defendant's Online Marketplace Accounts or Defaulting Defendant's websites identified on Schedule A from transferring or disposing of any money or other of Defaulting Defendant's assets.

7. All monies currently restrained in Defaulting Defendant's financial accounts, including monies held by WISH and PayPal, are hereby released to IMHL as partial payment of the above-identified damages, and WISH and PayPal is ordered to release to IMHL the amounts from Defaulting Defendant's WISH and PayPal accounts within ten (10) business days of receipt of this Order.

8. Until IMHL has recovered full payment of monies owed to it by any Defaulting Defendant, IMHL shall have the ongoing authority to serve this Order on WISH and PayPal in the event that any new WISH and PayPal accounts controlled or operated by Defaulting Defendant is identified. Upon receipt of this Order, WISH and PayPal shall within two (2) business days:

    a. Locate all accounts and funds connected to Defaulting Defendant, Defaulting Defendant's Online Marketplace Accounts or Defaulting Defendant's websites, including, but not limited to, any WISH and PayPal accounts;

    b. Restrain and enjoin such accounts or funds that are China or Hong Kong based from transferring or disposing of any money or other of Defaulting Defendant's assets; and

    c. Release all monies restrained in Defaulting Defendant's WISH and PayPal accounts to IMHL as partial payment of the above-identified damages within ten (10) business days of receipt of this Order.

9. Until IMHL has recovered full payment of monies owed to it by any Defaulting Defendant, IMHL shall have the ongoing authority to serve this Order on any banks, savings and loan associations, or other financial institutions (collectively, the "Financial Service Providers") in the event that any new financial accounts controlled or operated by Defaulting Defendant is identified. Upon receipt of this Order, the Financial Service Providers shall within two (2) business days:

   a. Locate all accounts connected to Defaulting Defendant, Defaulting Defendant's Online Marketplace Accounts or Defaulting Defendant's websites;

   b. Restrain and enjoin such accounts from receiving, transferring or disposing of any money or other of Defaulting Defendant's assets; and

   c. Release all monies restrained in Defaulting Defendant's financial accounts to IMHL as partial payment of the above-identified damages within ten (10) business days of receipt of this Order.

10. In the event that IMHL identifies any additional online marketplace accounts, domain names or financial accounts owned by Defaulting Defendant, IMHL may send notice of any supplemental proceeding to Defaulting Defendant by e-mail at the email addresses identified in Exhibit 2 to the Declaration of Paul Varley and any e-mail addresses provided for Defaulting Defendant by third parties.

This is a Final Judgment.

ENTERED:

5/29/18                          _____

                                   Jorge L. Alonso
                                   United States District Judge